# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 18-cr-61 (MJD/SER) |
| Plaintiff, | |
| v. | **ORDER** |
| Arturo Leal-Monroy, | |
| Defendant. | |

Diane Dodd, Special Assistant United States Attorney, United States Attorney's Office, Counsel for Plaintiff.

Douglas Olson, Assistant Federal Defender, Federal Defender's Office, Counsel for Defendant.

## I.   Introduction

Defendant has been charged with re-entry of a removed alien in violation of the Immigration and Naturalization Act ("INA"), 8 U.S.C. §§ 1326(a), (b)(2) and 6 U.S.C. §§202, 557.  The Indictment alleges that Defendant was previously removed from the United States on or about April 3, 1998 following his 1997 conviction in the state of Illinois of the charge of Aggravated Criminal Sexual Abuse in violation of ILCS § 5/12-16(c)(1)(i).  The Indictment further alleges that

on or about October 22, 2017, Defendant knowingly and unlawfully entered and was found in the United States without having obtained the consent of the Attorney General.

Defendant moves to dismiss the Indictment pursuant to Fed. R. Crim. P. 12(b)(3) due to procedural deficiencies in the 1998 immigration removal proceedings underlying the current charge.  The motion was heard by Magistrate Judge Rau.  Following briefing and oral argument, Magistrate Judge Rau issued a Report and Recommendation recommending the Court grant the motion to dismiss the Indictment.   The government has filed objections to the Report and Recommendation asserting the Magistrate Judge failed to apply the proper legal standard, erred in finding the defendant was functionally deprived of judicial review and that the removal proceedings were fundamentally unfair.

Pursuant to statute, the Court has conducted a <u>de novo</u> review of the record.  28 U.S.C. § 636(b)(1); Local Rule 72.2(b).  Based upon that review, the Court will adopt the Report and Recommendation to the extent it finds the

removal proceedings were unfair based on misinformation provided by the government attorney and the lack of judicial review.[1]

## II. Motion to Dismiss

### A. Standard

Pursuant to 8 U.S.C. § 1326(d), an alien-defendant may collaterally attack the underlying removal proceedings where:

> **(1)** the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> **(2)** the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> **(3)** the entry of the order was fundamentally unfair.

"The defendant must meet all three requirements in order to successfully collaterally attack the prior removal order." United States v. Tamayo-Baez, 820 F.3d 308, 313 (8th Cir. 2016). "The defendant 'bears the burden of proof in a collateral attack upon a prior deportation.'" Id. (quoting United States v. Martinez-Amaya, 67 F.3d 678, 681-82 (8th Cir. 1995)).

### B. Analysis

#### 1. Factual Background

---

[1] The Court does not adopt Section III (A)(1) of the Report and Recommendation in light of the recent Eighth Circuit opinion in Ali v. Barr, 924 F.3d 983 (8th Cir. 2019) (declining to extend Pereira to removal proceedings).

The Court incorporates the facts set forth in the Report and Recommendation.

### 2. Legal Analysis

Defendant argues that the underlying removal proceedings were badly marred and cannot serve as the basis for the present § 1326 charge. At the original removal proceedings, Defendant asserts he appeared without counsel and that the record does not demonstrate a knowing and intelligent waiver of his rights, including the right to counsel, the right to challenge the proceedings, the right to seek alternative relief, to apply for suspension of deportation or his right to appeal the decision. The Court agrees.

As noted above, to succeed in a collateral attack of a prior removal order, Defendant must meet all three requirements in § 1326(d). Based on the record before the Court, Defendant has met this burden.

#### a) Exhaust Administrative Remedies

The Court finds Defendant is excused from showing he exhausted his administrative remedies because the prior immigration proceedings were so fundamentally unfair that his waiver of his appeal rights cannot considered knowing and intelligent.

Defendant did not appear with counsel. The presiding immigration judge, O. John Brahos ("IJ")[2], asked Defendant if had talked with counsel, and Defendant responded that he did speak with counsel prior to the hearing, and that counsel informed him if he was held in custody, counsel would not represent him. (Doc. No. 58-2 at 4.) The IJ asked Defendant if he wanted a continuance, but when Defendant learned he would be held in custody during such continuance, he asked to proceed because he did not want to remain in custody for any period of time. (Id.) The IJ then proceeded with the bail hearing.

The IJ initially noted that he did not believe the bail amount should be set high based on the fact that he was sentenced to probation on the underlying criminal charge. (Id. at 9.) Nonetheless, the IJ appeared to quickly change course when he asked the INS attorney if he would appeal if bail was set at $1,500 – to which the INS attorney indicated he would appeal.

> THE COURT: Mr. Fitter [government counsel] we have a man who was convicted of a serious offense. Nevertheless, the criminal judge, in his infinite wisdom, did not decide that he should serve jail time but permitted him to be released into the community. It seems to belie the Service's position that he would be a danger to society, to a live person, or

---

[2] Judge Brahos retired from the immigration bench in February 2008. Castilho de Oliveira v. Holder, 564 F.3d 892, 900 n. 4 (7th Cir. 2009) (reversing and remanding removal order based on court's finding that alien did not receive a fair hearing before a neutral immigration judge, finding Judge Brahos "repeatedly interrupted the testimony to ask irrelevant and sometimes inflammatory questions, refused to consider important evidence, and decided the case without seriously engaging with the evidence in the record.")

5

> property. If I were to release him on a $1,500 bond would the Service take an appeal?
> MR. FITTER: Absolutely.
> THE COURT: All right.
> MR. FITTER: There's no doubt about that.
> THE COURT: All right. That's fine.

(Id.)

The IJ then asked Defendant a number of questions about his background, and then allowed counsel for the INS to put evidence into the record concerning Defendant's prior criminal history. The IJ interrupted and asked counsel if he "set the bond at $5,000, would you take an appeal on that?" (Id. at 17.) Counsel responded: "I'm not finished yet. THE COURT: All right." (Id.) Counsel put additional evidence into the record concerning Defendant's criminal history and his failure to appear at court hearings. (Id. at 17-27.) The following exchange then took place between the IJ and government counsel:

> THE COURT: So I take it you want a substantial bond, Mr. - -
> MR. FITTER: I –
> THE COURT: What would you consider? $10,000? Is that substantial enough? If I were to set a bond at 10,000, would you take an appeal?
>
>     \* \* \*
>
> THE COURT: I think 10,000 is sufficiently high to show that he would appeal – would appear. If I were to set that, would you take an appeal?
> MR. FITTER: (multiple inaudible words)
> THE COURT: All right.

6

(Id. at 28-29.)

In addition to the IJ showing wholly improper deference to government counsel concerning the amount of bail, it appears the IJ did not even ask Defendant whether he would like anyone to speak on his behalf in support of a lower bail amount, despite the fact that he knew members of Defendant's family and his pastor were present.

Although immigration judges are appointed by the Attorney General, they are nonetheless subject to an Ethics and Professionalism Guide that is based on federal law and regulations governing employees of the Department of Justice. https://www.justice.gov/sites/default/files/eoir/legacy/2013/05/23/EthicsandProfessionalismGuideforIJs.pdf.  Like the Codes of Judicial Conduct, the Ethics and Professionalism Guide provides immigration judges "shall not give preferential treatment to any organization or individual when adjudicating the merits of a particular case."  Section V. Impartiality.  Immigration judges must also "endeavor to avoid any actions that, in the judgment of a reasonable person with knowledge of the relevant facts, would create the appearance that he or she is violating the law or applicable ethical standards."  Section VI. Appearance of Impropriety.  Finally, an immigration judge "should not, in the performance of

official duties, by words or conduct, manifest improper bias or prejudice." Section XI. Acting with Judicial Temperament and Professionalism.

Never in this Court's 36 years on the bench, or 11 years as a trial attorney has it seen a judicial officer of any kind act in such an unethical, partial manner. The IJ presides over removal proceedings, not government counsel. 8 U.S.C. § 1229a(a)(1); 8 CFR § 1240.1(c) ("The immigration judge shall receive and consider material and relevant evidence, rule upon objections, and otherwise regulate the course of the hearing.")

If Defendant had been represented by counsel, this Court believes Judge Brahos would never have engaged in this improper behavior. But even if the presence of counsel had not altered the manner in which Judge Brahos conducted the bail hearing, defense counsel would have had the duty to appeal the bond determination, request that a new IJ preside over Defendant's removal proceedings, and file an ethical complaint against Judge Brahos. Had this happened, the Court believes the result of these removal proceedings would have been different.

The Court thus finds that by allowing counsel for the INS to dictate the amount of bail, which ultimately ensured that Defendant would remain in

custody, Judge Brahos denied Defendant due process and rendered the removal proceedings fundamentally unfair.

### b) Deprivation of Judicial Review

Where an alien-defendant has not been informed of his rights during a removal hearing, he had no meaningful opportunity to challenge the removal and therefore was deprived of judicial review. See United States v. Limones-Valles, 2016 WL 7489446, at *17 (N.D. Iowa Dec. 30, 2016) (citing United States v. Lopez-Collazo, 824 F.3d 453 (4th Cir. 2016)). Based on the above, the Court finds Defendant did not knowingly and intelligently waive his rights to appeal and was therefore deprived of judicial review.

### c) Entry of Removal Order Fundamentally Unfair

"To prove that the removal order was 'fundamentally unfair,' the defendant 'must show both "a fundamental procedural error" and actual prejudice.'" United States v. Morales, 17CR00314, 2018 WL 1891493, at *2 (D. Minn. Apr. 19, 2018) (citing United States v. Santos–Pulido, 815 F.3d 443, 445 (8th Cir. 2016) (quoting United States v. Torres–Sanchez, 68 F.3d 227, 229 (8th Cir. 1995)).

Defendant argues the prior immigration proceedings were fundamentally unfair because 1) the IJ and INS counsel provided Defendant faulty legal advice; and 2) the IJ and INS counsel failed to provide sufficient time and/or opportunity after the bond hearing to hire counsel or formulate a viable legal defense to removal. The Court agrees.

The prior removal proceedings were fundamentally unfair because the IJ and INS counsel provided Defendant misinformation with respect to his prior conviction for aggravated sexual abuse of a minor – that such conviction left the court with no alternative other than removal. Had bail been set at $1,500, Defendant may have been able to secure counsel, who could have then challenged whether his conviction for aggravated sexual abuse of a minor qualified as an "aggravated felony" as defined in the INA, § 1101(a)(43)(A). For example, Defendant contends that because sexual abuse of a minor had recently been added to the definition of aggravated felony in the INA at the time of his removal proceedings in 1998, he could have presented a potentially successful argument that this conviction did not qualify as an aggravated felony under the INA. Because Defendant has demonstrated that the results of the removal

proceedings could have been different, the removal proceedings were fundamentally unfair, and Defendant is entitled to the relief sought.

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Doc. No. 40] is **GRANTED.** The Indictment is dismissed.

Dated: July 16, 2019

       /s Michael J. Davis
MICHAEL J. DAVIS
United States District Court